UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TRUSTEES OF THE NORTHEAST CARPENTERS HEALTH, PENSION, ANNUITY, APPRENTICESHIP and LABOR MANAGEMENT COOPERATION FUNDS,

                                              Petitioners,

-against-

VERSATILE CONSTRUCTION, INC.,

                                              Respondent.

20 CV _____

**PETITION TO CONFIRM AN ARBITRATION AWARD**

---

Petitioners, Trustees of the Northeast Carpenters Health, Pension, Annuity, Apprenticeship and Labor Management Cooperation Funds ("Petitioners" and/or the "Funds") by and through their attorneys, Virginia & Ambinder, LLP ("V&A"), as and for their Petition to Confirm an Arbitration Award, respectfully allege as follows:

## NATURE OF THE ACTION

1. This is an action under section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1132(a)(3); section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185, to confirm and enforce an Arbitrator's Award rendered pursuant to a collective bargaining agreement between the North Atlantic States Regional Council of Carpenters f/k/a the New England Regional Council of Carpenters ("Union") and Versatile Construction, Inc. ("Respondent").

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, and 29 U.S.C. §§ 185 and 1132(e)(1).

3. Venue is proper in this Court pursuant to 29 U.S.C. § 1132(e)(2) because the ERISA Funds (as defined below) are administered in this district.

## THE PARTIES

4. Petitioners Trustees of the Northeast Carpenters Health, Pension, Annuity and Apprenticeship Funds, successors to the Empire State Carpenters Annuity, Apprenticeship, Pension, and Welfare Funds (the "ERISA Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with ERISA. The Trustees are fiduciaries of the ERISA Funds within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21). The ERISA Funds maintain their principal place of business at 270 Motor Parkway, Hauppauge, New York 11788.

5. Petitioners Trustees of the Northeast Carpenters Labor Management Cooperation Fund, successor to the Empire State Carpenters Labor Management Cooperation Fund (the "Labor Management Fund") are employer and employee trustees of a labor management cooperation committee established under section 302(c)(9) of the LMRA, 29 U.S.C. § 186(d)(9). The Labor Management Fund maintains its principal place of business at 270 Motor Parkway, Hauppauge, New York 11788.

6. Respondent is a business corporation incorporated under the laws of the State of New York. At relevant times, Respondent was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. Respondent maintains its principal place of business at 62 Cherry Lane, Syosset, New York, 11791.

## THE ARBITRATION AWARD

7. On or about August 18, 2016, Respondent entered into a short form agreement with the Union. A copy of the short form agreement is annexed hereto as **Exhibit A**.

8. Pursuant to the short form agreement, Respondent agreed to be bound to every applicable current collective bargaining agreement between the Union and the members of the contractor associations. *See* Exhibit. A.

9. The short form agreement further provides that it shall continue in effect for the duration of the applicable collective bargaining agreements, and shall continue in full force and effect from year to year unless either party notifies the other in writing of the cancellation of the agreement at least 90 days before the expiration of the then current collective bargaining agreement. *See* Ex. A.

10. Upon information and belief, neither Respondent nor the Union provided notice to terminate the agreement. Respondent therefore remains bound to the short form agreement.

11. On or around June 26, 2017, Respondent entered into an agreement (the "International Agreement") with the United Brotherhood of Carpenters and Joiners of America ("UBCJA"). A copy of the International Agreement is annexed hereto as **Exhibit B**.

12. Pursuant to the International Agreement, Respondent agreed to "comply with the contractual wages, fringe benefits, hours and other working conditions established between the International Union affiliates and the employers or recognized employer agencies in the localities in which the Employer does any work within the jurisdiction of the International Union." Ex. B, Article I.

13. The International Agreement states that "[p]ayment of annuity, pension and/or health and welfare contributions for an employee's work in each locality shall be made to such funds and in such amounts as are identified in the applicable collective bargaining agreement for that locality . . . ." Ex. B, Art. II.

14. The International Agreement further states that "[t]his Agreement shall be effective as of the below execution date and shall remain in effect for three (3) years from that date, and it shall automatically renew itself for subsequent three-year periods unless written notice to terminate is given by either party to the other by registered or certified mail not more than ninety (90), and not less than sixty (60), days prior to its expiration date or the expiration date of any subsequent renewal period." Ex. B, Art. VIII.

15. The International Agreement provides that it shall remain in effect for three years from the execution date. Accordingly, Respondent remains bound to the International Agreement.

16. Pursuant to the short form agreement and the International Agreement, Respondent has at relevant times been bound to the June 1, 2016 through May 31, 2021 Northwest Region Agreement (the "Northwest CBA"), the May 1, 2019 through April 30, 2022 Agreement between Local Union 290 and the Building Contractors Association (the "Local Union 290 CBA"), and the May 1, 2019 through April 30, 2022 Agreement between the Associations and Local Union 279 (the "Local Union 279 CBA"). Copies of the Northwest CBA, the Local Union 290 CBA, and the Local Union 279 CBA (collectively, the "CBAs") are annexed hereto as **Exhibit C**, **Exhibit D**, and **Exhibit E**, respectively.

17. The CBAs require Respondent, *inter alia*, to make contributions to the Funds for all work within the trade and geographical jurisdiction of the Union. *See* Ex. C, Art. 16, Section 1; Ex. D, Art. Sixteen, § (a); Ex. E, Art. Sixteen, § (a).

18. The CBAs also require Respondent, *inter alia*, to comply with the Funds' agreements, declarations of trust, plans, rules, policies, and regulations. *See* Ex. C, Art. 16, § 3; Ex. D, Art. Sixteen, § (a); Ex. E, Art. Sixteen, § (a).

19. The Trustees of the Funds established a Joint Policy for the Collection of Delinquent Contributions ("Collection Policy"). A copy of the Collection Policy is annexed hereto as **Exhibit F**.

20. The Collection Policy provides that "[i]f an employer fails to submit remittance reports, weekly payroll reports, or other reports of work for which contributions to the Funds are required, such that the Funds cannot determine the amount owed by the employer for a given month, then…[t]he [Funds] will compute the estimated amount of contributions due by assuming that the hours for which the employer is obligated to contribute for each week in the unreported month equal the highest number of average hours for which the employer was obligated to contribute in a week for any four consecutive weeks within the 36 months immediately preceding the unreported month." Ex. F, Art. III, § 3.2.

21. Pursuant to the Collection Policy, interest on delinquent contributions is to be calculated at the rate of 0.75% per month. *See* Ex. F, Art. II, § 2.1 (D).

22. The Collection Policy provides that, "[l]iquidated damages shall be calculated from the Due Date, and shall become due and owing if suit is commenced and/or arbitration is demanded. The amount of the liquidated damages shall be 20% of the delinquent Contributions." Ex. F, Art. VI, § 6.1.

23. A dispute arose when, in violation of the CBA, Respondent failed to submit reports and contributions owed to the Funds for the period August 1, 2019 to the present.

24. The Funds determined Respondent failed to remit an estimated principal deficiency in the amount of $44,608.77.

25. The Collection Policy provides that, in the event an employer fails to remit contributions to the Funds, the matter shall be sent to arbitration before the Funds' designated arbitrator. *See* Ex. F, Art. II, § 2.3 (A).

26. The Collection Policy further provides that the employer shall be liable for all costs incurred in collecting delinquent contributions, including without limitation, audit costs and arbitration fees. *See* Ex. F, Art. VI, § 6.3.

27. Pursuant to the Collection Policy, Petitioners initiated arbitration before the designated arbitrator, J.J. Pierson. Petitioners noticed said arbitration by mailing a Notice of Intent to Arbitrate Delinquency to Respondent by Certified Mail. A copy of the Notice of Intent to Arbitrate Delinquency is annexed hereto as **Exhibit G**.

28. Thereafter, the arbitrator held a hearing and rendered his award, in writing, dated December 2, 2019, determining said dispute (the "Award"). A copy of the Award was delivered to Respondent. A copy of the Award is annexed hereto as **Exhibit H**.

29. The arbitrator found that Respondent was in violation of the terms of the CBA and ordered Respondent to pay the Funds the sum of $52,715.34, consisting of an estimated deficiency of $44,608.77, current interest of $335.40, past interest of $173.33, liquidated damages of $5,947.84, attorneys' fees of $900, and the arbitrator's fee of $750 pursuant to the CBA. *See* Ex. H.

30. Respondent has failed to abide by the Award.

31. The Award has not been vacated or modified and no application for such relief is currently pending.

32. This petition is timely, as it was filed within the one-year statute of limitations applicable to a petition to confirm an arbitrator's award.

33. Petitioners are entitled to the reasonable attorneys' fees and costs expended in this matter pursuant to the Award and Section 502(g) of ERISA, 29 U.S.C. § 1132(g). *See also* Ex. F, Art. VI, § 6.2.

34. Copies of V&A's contemporaneous time records, reflecting all time spent and all activities performed in the prosecution of this matter by its attorneys and staff, are annexed hereto as **Exhibit I**.

35. I, Nicole Marimon ("NM" in the accompanying billing records), am a 2014 graduate of Fordham University School of Law, and a partner at V&A. Since graduating law school and being admitted to the New York State bar, I have handled the prosecution of numerous ERISA collections actions. V&A billed my time at a rate of $350 per hour.

36. V&A billed the legal assistants' time at a rate of $120 per hour for work performed in connection with this action.

37. In my experience, the foregoing hourly rates are similar to or lower than the rates typically charged by attorneys of commensurate skill and experience in similar actions in the Southern and Eastern Districts of New York.

38. V&A's total billings in this matter amount to $1,140 reflecting 7.2 hours of work. *See* Ex. I.

39. In addition, V&A will also advance $470 in court filing fees and service fees upon the filing of the instant petition.

40. Accordingly, Petitioners are entitled to recover $1,610 in attorneys' fees and costs incurred in connection with this matter.

**WHEREFORE,** Petitioners respectfully request that this Court:

1. Confirm the Award in all respects;

2. Award judgment in favor of Petitioners and against Respondent in the amount of $52,715.34 pursuant to the Award plus interest from the date of the Award through the date of judgment;

3. Award judgment in favor of the Petitioners and against Respondent in the amount of $1,610 in attorneys' fees and costs arising out of this petition; and

4. Award Petitioners such other and further relief as is just and proper.

Dated: New York, New York
March 4, 2020

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

By: ____/s/_____

Nicole Marimon
Charles Virginia
40 Broad Street, 7th Floor
New York, New York 10004
Telephone: (212) 943-9080
Fax: (212) 943-9082
*Attorneys for Petitioners*